## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **MARIA LOURDES LOPEZ** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  3:20-cv-313** |
| | § | |
| **LQ MANAGEMENT, LLC,** | § | |
| **INDIVIDUALLY AND D/B/A LA QUINTA** | § | |
| **INNS & SUITES, JAMIE MATISE, AND** | § | |
| **DAVID ROQUE,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' NOTICE OF REMOVAL

Defendants LQ Management, LLC, individually and d/b/a La Quinta Inns & Suites ("Company"), Jamie Macias ("Macias")[1] and David Roque ("Roque") (collectively, "Defendants") jointly petition this Court, pursuant to 28 U.S.C. § 1441, to remove this action from the 41st Judicial District Court, El Paso County, Texas, to the United States District Court for the Western District of Texas, El Paso Division. As grounds for removal, Defendants state as follows:

## INTRODUCTION AND SUMMARY

1.    This is an employment discrimination suit. Plaintiff originally filed suit in December 2019, and alleged discrimination claims against the Company under the Texas Labor Code, and common-law assault claims against the individual defendants. Because those defendants are Texas citizens, Defendants initially were unable to remove the lawsuit to this Court. On December 4, 2020, Plaintiff admitted that the assault claims are baseless. Presumably

---

[1] Macias was incorrectly named in Plaintiff's Original Petition as "Jamie Matise." Plaintiff corrected the error in her Amended Petition.

sensing that removal was near, Plaintiff amended her petition on the next business day to add some more detailed (but still baseless) facts in support of the assault allegations. In a naked attempt to frustrate removal, Plaintiff also pleaded a new and facially time-barred "non-removable" claim against the Company for workers' compensation retaliation. The Court should disregard and dismiss the facially or admittedly baseless claims, and exercise diversity jurisdiction over Plaintiff's Texas Labor Code claims against the Company.

## PROCEDURAL HISTORY

2.     Plaintiff filed her Original Petition in the 41st Judicial District Court, El Paso County, Texas, captioned *Maria Lourdes Lopez v. LQ Management, LLC, individually and d/b/a La Quinta Inns & Suites, Jamie Matise, and David Roque*, Cause No. 2019-DCV-4910, on December 23, 2019. Plaintiff asserted the following claims:  (1) disability discrimination, (2) national origin discrimination, (3) age discrimination, and (4) retaliation, all in violation of the Texas Labor Code, and (5) assault. She alleged the statutory claims against only the Company, and the assault claims against only Macias and Roque. Defendants answered and denied the claims. After an exchange of written discovery, on November 24, 2020, and December 4, 2020, Defendants took Plaintiff's deposition. After realizing the damaging nature of her testimony, on December 7, 2020, Plaintiff filed her Amended Petition to allege for the first time a cause of action against the Company for workers' compensation retaliation claim under Chapter 451 of the Texas Labor Code.

## REMOVAL EVIDENCE

3.     In support of its Notice of Removal, Defendants rely on the pleadings on file in the state court, attached hereto as Exhibit A, including attachments thereto, and Defendants' Appendix in Support of Notice of Removal, filed contemporaneously herewith, which contains

(1) excerpts from the December 4, 2020 and November 24, 2020 depositions of Plaintiff (App. 1 - 77). Citations to the Appendix will indicate the relevant page of the Appendix as well as the page and line of the deposition testimony being quoted or cited.

## ARGUMENT AND AUTHORITY

4.      This Court has original jurisdiction of this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and the Company,[2] and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Removal is therefore appropriate pursuant to 28 U.S.C. § 1441. Removal is timely, in that this Notice is filed within one year after the commencement of the action, and within 30 days of December 4, 2020, the date the case became removable. 28 U.S.C. § 1446 (b) and (c).

### A.      Plaintiff and the Company are of Diverse Citizenship.

5.      Pursuant to 28 U.S.C. § 1441(b), an action between diverse parties is "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Plaintiff is a citizen of Texas. App. 58 (*Plt's Amended Pet.*, ¶ 2). The Company (*i.e.*, LQ Management, LLC) is a limited liability company.

6.      The citizenship of a limited liability company or other unincorporated association is determined not by its own principal place of business or place of formation, but rather by the citizenship of its members. *Surge Busy Bee Holdings, LLC v. Wiszniewski*, No. 3:19-cv-127-L, 2020 WL 4007132, at *3-4 (N.D. Tex. Feb. 24, 2020) (citing *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008)). The Company's sole member is La Quinta Intermediate Holdings, LLC, which is also a limited liability company, meaning the Court must look to the

---

[2] As discussed below, the citizenship of Macias and Roque must be disregarded for purposes of 28 U.S.C. §1441(b) because Plaintiff improperly joined Macias and Roque in this action for the purpose of attempting to defeat diversity jurisdiction

citizenship of *its* members. The sole member of La Quinta Intermediate Holdings, LLC, is La Quinta Holdings, Inc., a corporation formed under the laws of Delaware with its principal place of business in Parsippany, New Jersey. The Company is deemed a citizen of New Jersey and Delaware, but not Texas.[3] Complete diversity exists.

**B.**     **The Amount in Controversy Exceeds $75,000.**

7.     Pursuant to 28 U.S.C. § 1332(a), district courts have diversity jurisdiction over civil actions where the amount in controversy exceeds $75,000, exclusive of cost and interest. When a plaintiff's monetary demand is stated in her pleading, a defendant can rely on that allegation to meet the jurisdictional requirement for purposes of diversity jurisdiction. *See S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 492 (5th Cir. 1996). Here, Plaintiff "seeks monetary relief over $1,000,000," well over the $75,000 minimum amount in controversy required by 28 U.S.C. § 1332. *See Plf.'s Amended Pet*. ¶33.

**C.**     **Applicable Law:  Improper Joinder.**

8.     If a defendant has been improperly joined, the citizenship of that party is disregarded for purposes of determining diversity and applying § 1441(b). *See Burden v. Gen. Dynamics Corp.,* 60 F.3d 213, 217-18 (5th Cir. 1995) (citizenship of improperly joined defendant properly disregarded for purposes of removal); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 310 (5th Cir. 2002) (Texas citizen improperly joined).

9.     To establish improper joinder, Defendants must prove:  (1) there has been outright fraud in Plaintiff's recitation of jurisdictional facts; or (2) there is no possibility that the plaintiff would be able to establish a cause of action against the non-diverse defendant in state court. *Smallwood v. Ill. Central R.R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004). Defendants do not assert

---

[3] To the extent relevant, the Company is a Delaware LLC, and it also maintains its principal place of business in New Jersey, as does La Quinta Intermediate Holdings, LLC.

fraud by Plaintiff; therefore, the test for improper joinder is whether there is no possibility of recovery by Plaintiff against Macias and Roque. *Id*. A "mere theoretical possibility of recovery" against Macias and Roque is insufficient to avoid removal. *Id.* at 573 n. 9.

10.     A court may resolve the improper joinder issue in one of two ways. First, the court may conduct "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Int'l Energy Ventures Mgmt, L.L.C. v. United Energy Grp., Ltd.,* 818 F.3d 193, 202 (5th Cir. 2016) (quoting *Smallwood*, 358 F.3d at 573). Second, in limited circumstances, the court may conduct a summary inquiry to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. *Smallwood*, 385 F.3d at 573-74. When a plaintiff "has misstated or omitted discrete facts that would determine the propriety of joinder," the court should pierce the pleadings and consider those facts. *Id.*

**D.     Applicable Law:  The Elements of Assault.**

11.     Plaintiff's only cause of action against the individual defendants is for assault. Under Texas law, the elements of civil and criminal assault are the same. *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012) (citing *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 801 n. 4 (Tex. 2010)). Texas case law uses the terms "assault", "battery" and "assault and battery" interchangeably and without distinctions. *Waffle House*, 313 S.W.3d at 801 n.4. The definition incorporates common-law elements of both assault and battery. *See id*. The "statutory definition of simple assault sets out three distinct criminal offenses under § 22.01(a)(1)-(3). These are 'bodily injury' assault, assault by threat, and 'offensive contact' assault." *Landrian v. State*, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008) (citing TEX. PENAL CODE § 22.01(a)(1)-(3)); *see also Loaisiga*, 379 S.W.3d at 256; *Umana v. Kroger Tex., L.P.*, 239 S.W.3d 434, 436 (Tex. App.—

Dallas 2007, no pet.). Plaintiff has alleged all three types of assault by both individual defendants. Her recent admissions prove that the claims were baseless when pleaded.

**E.**     **No Physical Contact Means no "Bodily Injury" or "Offensive Contact" Assault.**

12.     As the names suggest, both "bodily injury" assault and "offensive contact" assault require proof that the defendant physically touched the plaintiff. TEX. PEN. CODE § 22.01(a)(1) ("recklessly causes bodily injury") and 22.01(a)(3) ("causes physical contact with another"). Plaintiff has alleged both types of assault by both Roque and Macias. App. 60-61, 63 (*Pl. Am. Pet.* ¶¶ 13-14, 28). However, Plaintiff recently admitted the falsity of these allegations. Specifically, Plaintiff testified that neither Roque nor Macias physically touched or harmed her:

Q: Did Ms. [Macias] ever physically touch you in a way that felt threatening?

**A: No. She just offended me.**

Q: What about Mr. Roque? Did he ever touch you in a way that felt threatening?

**A: No, he never touched me.**

App. 68 (*Plt.'s Dec. 4 Dep.* at 4:9-14). Plaintiff has no chance of recovery on her claims of "bodily injury" assault and "offensive contact" assault, and knew it at the time she filed suit. This leaves only "assault by threat," meaning threat of imminent bodily harm.

**F.**     **Plaintiff's "Assault by Threat" Claim is Meritless and Frivolous.**

13.     An assault by threat occurs when a person either "intentionally or knowingly threatens another *with imminent bodily injury*." TEX. PENAL CODE § 22.01(a)(2); *Dolkart v. State*, 197 S.W.3d 887, 893 (Tex. App.—Dallas 2006, pet. ref'd). This offense "is conduct-oriented, focusing upon the act of making a threat, regardless of any result that threat might cause. It is thus a 'nature of conduct offense,' not a 'result of conduct' offense." *Id.* (quoting *Landrian*, 268 S.W.3d at 536). Assault by threat focuses on "the defendant's words and conduct,

and the critical inquiry is whether a reasonable person under the circumstances would consider the words and conduct to be an objective threat of imminent bodily injury." *Jones v. Shipley*, 508 S.W.3d 766, 769 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *see Olivas v. State*, 203 S.W.3d 341, 347 (Tex. Crim. App. 2006) ("Although the question whether the defendant's conduct produced fear in the victim is relevant, the crucial inquiry remains whether the assailant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility.").

14.      Thus, to prove an action for assault by threat of bodily injury, Plaintiff must establish that Macias and/or Roque threatened her with imminent bodily injury and that her fear was reasonable. A threat of "bodily injury" is a declaration of intention to inflict "physical pain, illness, or any impairment of a physical condition." TEX. PEN. CODE §1.07(a)(8) *See, e.g.*, *Jones*, 508 S.W.3d at 770-71 (defendant's vague threat to "get" plaintiff, in light of defendant's earlier threat to get plaintiff expelled from school, was not threat of bodily injury). Words alone are not enough to constitute an assault. *LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 138 (Tex. App.—Amarillo 1997, writ denied). There must be some overt act in apparent execution of a threat. *Dunning v. State*, 242 S.W.2d 367, 368 (Tex. Crim. App. 1951).

15.      An action for assault requires the threatened harm to be "imminent." "Imminent" means "on the verge of happening" or "near at hand." *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989). To be imminent, the threat must be one of present harm, not future harm. *Cox v. Waste Mgmt.*, 300 S.W.3d 424, 439 (Tex. App.—Fort Worth 2009, pet. denied). Examples of imminent threats include:  threatening to beat up the victim while sprinting toward him and swinging a large branch like a baseball bat (*Babcock v. State*, 501 S.W.3d 651, 654-55

(Tex. App.—Eastland 2016, pet. ref'd)); and pointing a shotgun at the victim. *Garcia v. State*, 819 S.W.2d 634, 636 (Tex. App.—Corpus Christi 1991, no writ)).

### G.    <u>Macias Never Threatened Plaintiff with Imminent Bodily Injury.</u>

16.    In the Amended Petition, Plaintiff does not allege any specific threat of imminent harm. App. 60-61 (*Plt.'s Amended Pet.* at ¶¶ 13, 14). Instead, she alleges generalities such as "assaults occurred at the reception area" and Defendant Macias "yelled and cursed" at her. *Id*. at ¶ 14. Plaintiff's testimony provides no further details, instead referring to generalities such as "aggression." App. 68 (*Plt.'s Dec. 4 Dep.* 5:1-3). When asked specifically about Macias's alleged threat to harm her *physically*, Plaintiff's only example was a comment about her age:

> Q: Talking about Ms. Matise, did you ever feel physically threatened by Ms. Matise, even in a situation where she didn't touch you?
>
> A: Yes.
>
> Q: How did you feel threatened by Ms. Matise?
>
> A: Well, there was some aggression, aggression toward me because as compared to her I was an elder.
>
> **Q: What words did Ms. Matise use?**
>
> **A: Well, I was old. I was an old broad and I shouldn't be there.**
>
> Q: Anything else?
>
> A: Yes, it was just aggression. It was aggression against me. Like on one occasion when I got there she says – and I was going to give – I was going to divide the rooms amongst several girls and she took a tablet and she says, "You go. You go and you  are going to do rooms, too." So it was humiliating. It was an aggression toward me.
>
> Q: Right. But what did she say that made you think she was going to physically hurt you?
>
> A: Okay. Well, she would yell at me. She would yell at me really in a really ugly way and she would say it in front of the guests. And on one occasion she said she couldn't stand me being by her.
>
> Q: Anything else?

A: It's just that there were so many occasions. Yes, it was like she was harassing me. She was harassing me mentally speaking. A lot of aggression.

**Q: Did Ms. Matise ever say that she was going to physically harm you?**

**A: No. Not to injure me, no.**

App. 68-69 (*Plt.'s Dec. 4 Dep.* at 4:15-18; 5:1-3; 5:17-6:12; 6:18-20).

17.     By her own words, Plaintiff felt "harassed," and then only "mentally speaking." At best, it is a repackaging of her age claim. Otherwise, it is an attempt to state a claim that Macias was generally unpleasant towards Plaintiff, which Macias denies, but which in any event is not actionable. Plaintiff's vague allegations of "harassment" and "aggression," even if true, do not rise to the level of a threat of "imminent bodily harm," whether that threat is viewed objectively or subjectively. Plaintiff has no possibility of recovery on the assault claim against Macias – or, at most, has a "theoretical possibility of recovery" – and Macias therefore has been improperly joined. The Court is required to disregard her citizenship for purposes of the diversity analysis. *Smallwood*, 385 F.3d at 573.

**H.     Roque Never Threatened Plaintiff with "Imminent Bodily Harm."**

18.     Plaintiff has likewise admitted that her "assault by threat" allegation against Roque was false when she pleaded it:

Q: Ms. Lopez, did you ever feel physically threatened by Mr. Roque, even in a situation where he didn't physically touch you?

A: Yes.

Q: When?

A: Well, they would do that constantly, daily. I don't remember the date, but it was on one occasion when he said that I should go home.

Q: You felt threatened when he said to go home?

A: Uh-huh. Because I told him, "Just let me get my purse." When I went to go get my purse, he was following me. He followed me all the way to where my purse

---

was. I got my purse and I went all the way to the car. I said – I felt fear. I said, well, what is he going to do to me?

App. 69 (*Plt.'s Dec. 4 Dep.* at 7:1-16). When asked about the context of Roque "following" her,

Plaintiff admitted Roque had just suspended her employment and asked her to go home. *Id*. at

7:17-23. Roque ***never threatened to physically harm*** Plaintiff:

> Q: Did he say he was going to hurt you?
>
> A: Not to injury, but he would harm me physically and mentally.
>
> Q: Well how did he harm you physically? You already said he didn't touch you physically.
>
> A: No, it was mentally. It was like – it was mental.
>
> **Q: Ms. Lopez, I am asking you specifically what words or words did he use that were threats to you physically.**
>
> **A: Physically. Well, that I was old, too old to be there. I had been there for too many years and that I should withdraw from the place there. That it was time that I get out of there, that he had people, new people, that could take over my position.**

*Id*. at 8:13-20. These alleged comments regarding Plaintiff's *age* or her *physical condition* have

no bearing on her assault allegations.

      19.    Plaintiff further admitted she does not know why Roque sent her home and that he

followed her out:

> A: It was just the day he followed me and I was afraid that he was going to do something to me. And he followed me and I went to my – I just got into my car.
>
> Q: What made you believe he was going to harm you the day he followed you?
>
> A: Okay. It was because, well, I really didn't know why he had sent me home that time. And so I thought to myself, why is he following me? So I walked faster, but then so did he. And so I just – I couldn't imagine what it was that he might do to me.
>
> Q: Did he say anything to you while he followed you?
>
> A: No, he didn't say anything to me, he merely followed me.

*Id*. at 9:1-15. Roque simply did not do or say *anything* that would support an assault claim:

> Q: Did he say how he was going to harm you?
>
> A: He didn't tell me how he was going to injure me, but he did injure me.
>
> Q: How did he injure you? Is it what we've already talked about?
>
> A: Well, yes. Everything he would do to me. He would humiliate me.
>
> Q: Ms. Lopez, when I'm asking you about harming you I'm asking did he threaten to physically harm you?
>
> A: No. No. Not physically, no. But he harmed me mentally speaking.
>
> Q: I'm asking you specifically how – were there any other instances besides the time he followed you to your car that you felt he was going to physically harm you?
>
> A: No.

App. 69-71 (*Plt.'s Dec. 4 Dep.* at 9:21-10:13; 10:19-23; *see* 20:25 – 21:6). The fact that Roque escorted Plaintiff out of the building after suspending her is hardly enough to state a plausible claim for assault by threat of "imminent bodily injury," and Plaintiff's admission that Roque **never** threatened to physically harm Plaintiff, an essential element of the cause of action, should be the end of the inquiry.

20.    Texas courts frequently hold that words and conduct that are objectively more threatening than Roque's alleged conduct in this case do *not* constitute assault by threat of imminent bodily injury, as a matter of law. *See, e.g.*, *Texas Bus Lines v. Anderson*, 233 S.W.2d 961, 963 (Tex. Civ. App.—Galveston 1950, writ ref'd n.r.e) (appellate court held no fact issue on assault when bus driver yelled "angrily" at plaintiff and positioned himself on the stairs of the bus "ready to kick [plaintiff] in the face" if he tried to force his way on the bus); *Moore v. City of Wylie*, 319 S.W.3d 778, 782-83 (Tex. App.—El Paso 2010, no pet.) (even though plaintiff was "terrified during the confrontation," no fact issue on assault by threat of imminent bodily injury

where supervisor, while reprimanding plaintiff, poked him in the chest with his finger three or

four times).

21.     Roque's alleged words and conduct are even less comparable to the type of

conduct that *has* been held to constitute assault by threat of imminent bodily injury. *See Wells v.*

*May*, 05-12-01100-CV, 2014 WL 1018135 (Tex. App.-Dallas Feb. 12, 2014) no pet.) (appellate

court found assault by threat where defendant leaned over the table and screamed, "I'm going to

kill you!", made repeated death threats, including that he was going to shoot him. When plaintiff

left the deposition, defendant pursued him through the office and to the elevator). By contrast,

Plaintiff admitted that Roque calmly and silently escorted Plaintiff from the building after

temporarily suspending her employment. Plaintiff did not feel threatened physically, and no

reasonable person would have. Based on her own testimony, Plaintiff has no plausible chance of

success on this claim. Therefore, Roque, like Macias, has been improperly joined. The Court can

and should ignore the citizenship of the individual defendants. Diversity exists.

I.     **Plaintiff's Workers' Compensation Retaliation Claim is Improperly Joined.**

22.     Plaintiff has no chance of success on her claim for workers' compensation

retaliation under Chapter 451 of the Texas Labor Code. The statute of limitations is two years.

*Bradley v. Philips Petroleum Co.*, 527 F. Supp. 2d 661, 695 (S.D. Tex. 2017) (citing *Johnson &*

*Johnson Med. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1996)); *Manning v. Alcatel Network Sys.,*

*Inc.*, No. 05-97-01933-CV, 1999 WL 1140056, *2 (Tex. App.—Dallas 2000, pet. denied). The

cause of action accrues "when the employee receives unequivocal notice of her termination."

*Johnson & Johnson*, 924 S.W.2d at 928.

23.     There is no dispute that Company separated Plaintiff from employment on or

about January 16, 2018. App. 75, 61 (*Plt.'s Nov. 24 Dep*. 160:16-22; *Plt.'s Amended Pet*. ¶ 16.)

Plaintiff filed the Original Petition on December 23, 2019, but failed to plead a cause of action for workers' compensation retaliation, and did not even mention that she had filed a workers' compensation claim. Instead, Plaintiff waited until December 7, 2020, to plead the retaliation claim, a date well outside of the statute of limitations. It is no coincidence that Plaintiff amended her petition to add the workers' compensation retaliation claim *one business day* after she admitted away the assault claims that had been keeping the case out of this Court. To the extent the Court harbors any doubt about Plaintiff's motivation, Plaintiff expressly alleged in the Amended Petition that "this action is not removable to federal court pursuant to 28 U.S.C. § 1445(c)." Plaintiff knows what she is doing. The Court should not allow her to get away with it.

24.     Defendants recognize that 28 U.S.C. §1445(c) generally provides that "a civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." Taken literally, Section 1445 is in tension with the improper joinder doctrine, which allows (and requires) the Court to disregard meritless claims that are improperly or fraudulently joined to defeat removal. May a Court not disregard a fraudulent or frivolous workers' compensation claim, forcing defendants to litigate otherwise removable claims in state court? That cannot be the case, and indeed, it is not.

25.     As discussed above, the statute of limitations for a claim under Chapter 451 of the Texas Labor Code is two years. Company separated Plaintiff from employment on January 16, 2018, and Plaintiff alleges that the termination decision was retaliatory. App. 63 (*Pl Am. Pet.* ¶ 26). Thus, the Chapter 451 claim accrued at the latest on January 16, 2018, and was required to be filed not later than January 15, 2020. Plaintiff certainly was aware of her workers' compensation claim at the time she filed suit on December 23, 2019. If it has substantive merit – something Defendants do not ask the Court to adjudicate – why did she wait until the day after

the case became removable to assert it? The only explanation is that Plaintiff wants to keep the case out of this Court, and evidently wants the Court to disregard the statute of limitations to do so.

26.     The "nonremovability" statute – 28 U.S.C. § 1445 – is not limited to workers' compensation claims. Among other causes of action, claims arising under the Jones Act are "ordinarily non-removable pursuant to 28 U.S.C. § 1445(a)." *McAdow v. Promus Companies, Inc.,* 926 F. Supp. 93, 94 (W.D. La. 1996). That does not give the plaintiff carte blanche to trap a case in state court with a meritless claim. Defendants "may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal." *Id.* (*quoting Lackey v. Atlantic Richfield Co*., 990 F.2d 202, 207 (5th Cir. 1993)). In *Lackey*, the Fifth Circuit noted that "lawsuits in which non-diverse defendants have been joined are ordinarily non-removable as well. Nonetheless, defendants are permitted to demonstrate that parties – or claims – are baseless in law and in fact and serve only to frustrate federal jurisdiction." *Lackey*, 990 F.2d at 207 (*quoting Dodd v. Fawcett Pubs., Inc*., 329 F.2d 82, 85 (10th Cir. 1964)). "The fact that Jones Act claims are ordinarily non removable does not prevent this inquiry." *Id*.

27.     A court in the Southern District of Texas faced very similar circumstances earlier this year. In *Rawls v. Old Republic Gen. Ins. Group, Inc*., --- F. Supp. 3d ---, 2020 WL 6374621 (S.D. Tex. Sept. 25, 2020), the defendant removed a state court lawsuit on the basis of diversity, despite the fact that the plaintiff pleaded a Chapter 451 claim. The plaintiff moved to remand. The court first explained that improper joinder of claims is, in principle, a suitable basis to deny a motion to remand:

> As a preliminary note, most federal courts deciding an improper joinder issue are faced with an alleged improper joinder of parties, rather than an improper joinder of claims, as is the case here. However, the few courts that have addressed improper joinder of claims have applied improper joinder of parties jurisprudence.

*See Parent v. Murphy Expl. & Prod. Co. – USA*, No. Civ. A. 07-446-C, 2008 WL 191636, at *5 (M.D. La. Jan. 22, 2008) ('[T]he court can see no reason not to apply [an improper joinder of parties] analysis to an assertion of [improper joinder of claims.'); *see also Dagon v. BNSF Ry. Co.*, No. 19-CV-00417-JPG, 2020 WL 4192348, at *5 (S.D. Ill. July 21, 2020) (concluding that the same jurisprudence should be used for 'these analogous doctrines' because any reason to apply different evidentiary standards was 'not readily apparent'). Joining with these sister courts, the Court applies the Fifth Circuit jurisprudence on improper joinder of parties to the alleged improper joinder of claims here.

*Rawls*, 2020 WL 6374621, at *3 (alterations and emphasis original).

28.     The *Rawls* court then applied the improper joinder principles to the plaintiffs' workers compensation claims, finding that it "need not look past the face of the pleadings because Plaintiffs' workers' compensation claim is barred by the Fifth Circuit's en banc opinion in *Flagg* and should be dismissed as having been improperly joined." *Id*. In *Flagg*, the Fifth Circuit held that a certain type of workers' compensation claim had to be administratively exhausted. The "question is whether Plaintiffs have improperly joined the workers' compensation claim because they have failed to exhaust it at the administrative level before proceeding to court." *Id*. The answer was yes, and the Court denied the plaintiffs' motion to remand, which was premised on Section 1445(c), and dismissed the defendant against whom the workers' compensation claim had been brought. *Id*. at *5.

29.     As in *Rawls*, the Court need not go beyond the pleadings to determine that Plaintiff's Chapter 451 claim is meritless and should be disregarded or dismissed. As a matter of law, "a statute of limitations may support a dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and *the pleadings* fail to raise some basis for tolling or the like." *Thomas v. Tyler County*, C.A. No. 1:09-CV-997, No. 2010 WL 4962968 at *11 (E.D. Tex. Nov. 4, 2010) (granting motion to dismiss pro se plaintiff's Chapter 451 claim because he alleged retaliatory discharge in December 2005 but did not file suit until December

2009) (*citing Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 661, 684-685 (S.D. Tex. 2007) (denying plaintiff's motion to amend to add a claim not pleaded at the outset of the lawsuit, because the claim would have been facially time barred)).

30.     Plaintiff has no excuse for sitting on her hands and waiting to spring the workers' compensation claim until it was needed to block removal, and she has no chance of succeeding on the merits of the workers' compensation claim, in any forum, because it is time barred. She has "no possibility of recovery." *Smallwood*, 385 F.3d at 574. The Court should follow the lead of its sister court, disregard the "nonremovability" argument, and dismiss Plaintiff's workers' compensation retaliation claim against Company. In the absence of non-diverse defendants and purportedly "non-removable" claims, the Court is free to adjudicate the remaining state law claims between Plaintiff and Company.

## PROCEDURAL REQUISITES

31.     Pursuant to 28 U.S.C. § 1446(a), an index of the documents filed in the state court action, the state court docket sheet, and copies of all documents filed in the state court action, other than discovery, are attached hereto as *Exhibit A* (App. 1-66). The Certificate of Interested Persons required by Federal Rule of Civil Procedure 7.1 will be filed separately. A copy of this Notice of Removal is also being filed with the clerk of the state court in which the action was filed pursuant to Local Rule CV-3.

## REQUEST FOR RELIEF

32.     Defendants respectfully request that the United States District Court for the Western District of Texas, El Paso Division, accept this Notice of Removal, and that it assume jurisdiction of this case, dismiss the improperly joined claims and parties, and grant all other relief, general or special, at law or in equity, to which Defendants may be justly entitled..

Respectfully submitted,

*/s/ John M. Barcus*
Gary D. Eisenstat
State Bar No. 06503200
Gary.Eisenstat@ogletreedeakins.com
John M. Barcus
State Bar No. 24036185
John.Barcus@ogletreedeakins.com
Jeff T. Leslie
State Bar No. 24091294
Jeff.Leslie@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
8117 Preston Road, Suite 500
Dallas, TX  75225-4324
Telephone: 214-987-3800
Facsimile:  214-987-3927

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

This is to certify that on December 21, 2020, I served the foregoing document to counsel of record via the Court's e-filing system and email.

*/s/ John M. Barcus*
John M. Barcus

45298373.1